## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| **RESSLER HARDWOODS AND** | * | **CHAPTER 11** |
| **FLOORING, INC.,** | * | |
| Debtor | * | |
| | * | **CASE NO. 1:08-bk-01878MDF** |
| **JAMES LITTLE,** | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **ADV. NO. 1:08-ap-00109** |
| | * | |
| **RESSLER HARDWOODS AND** | * | |
| **FLOORING, INC.; KEITH RESSLER;** | * | |
| **KENNETH L. RESSLER; KAREN R.** | * | |
| **RESSLER,** | * | |
| Defendants | * | |

### OPINION

### Background

Ressler Hardwoods and Flooring, Inc. ("Debtor") is a Lebanon, Pennsylvania business that manufactures hardwood flooring. Defendants Keith Ressler, Kenneth Ressler and Karen Ressler (collectively "the Resslers") are, respectively, Debtor's President, Vice President and Secretary. Together they hold one hundred percent of Debtor's stock.

On January 15, 2008, James Little ("Little") filed a lawsuit against Debtor and the Resslers in the United States District Court for the District of Maryland to recover funds he paid to Debtor that he alleges were unlawfully retained and to seek damages for violation of the Maryland Securities Act ("MSA"), Md. Code Ann., Corps. & Assns. § 11-501 et seq. On May 27, 2008, Debtor filed the instant bankruptcy case. By order dated July 14, 2008, the Maryland district court transferred Little's lawsuit to the Bankruptcy Court for the Middle District of

Pennsylvania.[1] Before me now is the motion for summary judgment filed by Debtor and the Resslers requesting dismissal of two counts of the complaint, which allege violations of the MSA.

## Jurisdiction

### a.    *Claims against the Debtor*

Section 1334 of title 28 provides that a district court has "original and exclusive jurisdiction of all cases under title 11" and "original and not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) and (b). District courts are authorized to refer bankruptcy cases and related proceedings to the bankruptcy courts in their district under 28 U.S.C. § 157(a). Because the District Court for the Middle District of Pennsylvania has referred all bankruptcy cases to the bankruptcy courts in this district, bankruptcy courts have jurisdiction to hear: (1) cases under title 11; (2) other proceedings under title 11; (3) proceedings arising in a case under title 11; and (4) proceedings related to a case under title 11. *In re Exide Technologies*, 544 F.3d 196, 205 (3d Cir. 2008).

The first three categories of matters heard by the bankruptcy court are "core" proceedings. In core proceedings, a bankruptcy court not only can hear a matter, it also can enter a final order and judgment. 28 U.S.C. § 157(b)(1). Proceedings "related to" a title 11 case, however, are "non-core." "A'[n]on-core' proceeding belongs to 'the broader universe of all proceedings that are not core proceedings but are nevertheless related to a bankruptcy case.' " *Halper v. Halper*, 164 F.3d 830, 837 (3d Cir.1999) (internal citations omitted) *cited in Exide Technologies*, 544 F.3d at 206. A bankruptcy court can hear the matter, but the district court must issue the final

---

[1]The order was entered pursuant to Debtor's unopposed motion to transfer venue.

2

order and judgment after conducting a *de novo* review of the bankruptcy court's proposed findings of fact and conclusions of law. However, the bankruptcy court may issue the final order in the matter upon concurrence of the parties. *Halper,* 164 F.3d at 836.

Because the complaint was filed in the Maryland federal court before Debtor filed its bankruptcy case, neither party had an opportunity to address whether the issues raised in Little's complaint are core matters or whether they are otherwise related to the bankruptcy case. The jurisdictional issue must be addressed, however, because a bankruptcy court is compelled by statute to determine whether a matter is properly before it.[2]

The first two counts of Little's complaint are premised on alleged violations of the MSA. The third count is titled "Assumpsit for Moneys Had and Received." None of these causes of action appear to be core because they are not proceedings under title 11 or arising in a case under title 11. Little commenced his action before Debtor's bankruptcy was filed based upon state law claims. However, after the bankruptcy case was filed, he filed a proof of claim for $400,000.00. When a creditor files a proof of claim in a bankruptcy case, he becomes subject to the claims allowance process, which is a core proceeding. *See Langenkamp v. Culp,* 498 U.S. 42, 44 (1990) (when party submits proof of claim, it "trigger[s] the process of allowance and disallowance of claims," thereby consenting to bankruptcy court jurisdiction to make final decision affecting claim) (citing *Granfinanciera v. Nordberg,* 492 U.S. 33 (1989)). *See also Katchen v. Landy*, 382 U.S. 323, 330, 86 S. Ct. 467, 473 (1966); *Exide*, 544 F.3d at 207. Accordingly, Little's causes of

---

[2]28 U.S.C. § 157(c) states that a "bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."

action against Debtor have become core and subject entry of a final order and judgment by this Court.

### b. *Claims against the Resslers*

The Resslers have not filed for bankruptcy relief. Therefore, the filing of a proof of claim in Debtor's case does not affect my determination of whether the counts in Little's complaint directed at the Resslers are subject to this Court's jurisdiction. "[T]here is no authority that a party with a contingent claim for indemnification can bootstrap its claim onto the Bankruptcy Court's core jurisdiction." *In re Amanat,* 338 B.R. 574, 581 (Bankr. S.D.N.Y. 2005) *quoted in In re Exide Technologies*, 544 F.3d at 215 ( pre-petition state law cause of action against related non-debtor entity is not transformed into a "core" proceeding by filing proof of claim). Therefore Little's causes of action against Resslers are, at best, "related to" Debtor's bankruptcy case.

"The test for determining whether a civil proceeding is *related to* bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984). "For a federal court to have 'related to' jurisdiction over an action, the proceeding need not necessarily be against the debtor or against the debtor's property." *In re WorldCom, Inc. Securities Litigation*, 293 B.R. 308, 317 (S.D. N.Y. 2003). Applying the *Pacor* test, the bankruptcy court in *In re Frascella Enterprises, Inc.*, 349 B.R. 421 (Bankr. E.D. Pa. 2006) found that it had "related to" jurisdiction over state law causes of action against the principals of a small corporate debtor for violations of Pennsylvania consumer protection laws. The principals enjoyed a statutory right of indemnification from the corporation in the event they were found liable under the statute. Based upon the principals' contingent indemnification claim against the debtor corporation, the

4

court assumed jurisdiction over the claims against the debtor's principals. In the case before me, the Resslers are Debtor's directors, and Little's complaint asserts that they may share liability with Debtor for violations of the MSA. The officers of Pennsylvania corporations may be held jointly and severally liable for the alleged misconduct of the corporation if they personally took part in the misconduct, or if they specifically directed other officers, agents or employees of the corporation to commit the act of misconduct. *Donner v. Tams-Witmark Music Library, Inc.* 480 F.Supp. 1229, 1233 (D.C. Pa. 1979)(citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)); *Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967), *cert. denied*, 390 U.S. 988 (1968). If the Resslers are found to be jointly and severally liable with Debtor for damages to Little under the MSA, then any payment made by the Resslers in satisfaction of the claim will reduce the amount of Little's claim against Debtor's bankruptcy estate. Because of this joint and several liability, this Court has "related to" jurisdiction over Little's claim against the Resslers.

At this point in the proceeding, I have no basis upon which to determine whether the Resslers and Little would consent to the entry of a final order by this Court. "A court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge." *In re Sheridan*, 362 F.3d 96, 104 (1st Cir. 2004). *But see Galaxy Computer Services, Inc. v. Baker*, 325 B.R. 544 (E.D. Va. 2005) (party impliedly consented to bankruptcy court's power to issue partial summary judgment on non-dispositive matter by failing to raise core/non-core issue with bankruptcy court or appealing ruling in a timely fashion).[3] Accordingly, the record will remain open for ten (10) days after the date of

---

[3]At least one appellate court has indicated that in cases involving both core and non-core matters, a bankruptcy court may choose to enter bifurcated orders – a final order in the core matter and a proposed order in the non-core matter. *In re BN1 Telecommunications, Inc.*,

5

issuance of this Opinion and accompanying Order to allow the parties to file such a consent, if they desire. If consent is not filed, the findings and conclusions contained in this Opinion pertaining to the Resslers will be proposed findings and conclusions subject to de novo review by the district court under 28 U.S.C. § 157(c)(1).

## Factual Findings

Debtor was incorporated under the laws of Pennsylvania in February 1994 and has a registered office address at 233 Landis Valley Road, Lititz, Pennsylvania. Little is a natural person employed as an investment advisor and commodity trader, who resides in Maryland. In 2005 and 2006, Little's individual income exceeded $200,000.00. His net worth exceeded $1 million at the time Little and the Resslers entered into negotiations for the stock purchase.

Little was introduced to the Resslers in the spring of 2007 by his daughter, Nicole Little. Shortly thereafter, Little and Keith Ressler commenced negotiations whereby Little would purchase 51 percent of Debtor's outstanding stock for $1.2 million. In a letter dated July 6, 2007, Little informed Debtor of his "intent to complete the investment transaction" and enclosed a check for $200,000.00 as a "down-payment toward the purchase price." On July 24, 2007, he transferred another $200,000.00 in the form of a personal check made out to Debtor. On the memo line of the check Little wrote "for purchase of 51% of Ressler."

While a written agreement for the purchase was being drafted by an attorney, the parties held several meetings to work out the details of an operating agreement. Negotiations regarding

---

246 B.R. 845, 849 (B.A.P. 6th Cir. 2000). At this point in these proceedings, judicial economy would not be served by bifurcating the core and non-core causes of action within this proceeding. The claims against the non-debtor Defendants are identical to those against Debtor and, undoubtedly, will involve the same witnesses and evidence.

6

the specific terms of the agreement continued through the summer and early fall of 2007. The parties are in dispute regarding the reasons why negotiations broke down, but they generally agree that no negotiations took place after November 19, 2007.

On December 11, 2007, the Resslers caused Debtor to issue 26,021 shares (17% of the outstanding common stock) (the "Ressler shares") to Little. The shares were represented by a single certificate that was mailed to Little on or about the date of issuance. The shares were issued without being registered with the Maryland Office of Attorney General, Division of Securities.[4] On December 19, 2007, counsel for Little sent a letter to Debtor's counsel demanding that Debtor return the $400,000.00 paid by Little, plus interest at the Maryland statutory rate. Debtor, through its principals, refused to return the funds.

On January 15, 2008, Little filed the instant lawsuit in the United States District Court for the District of Maryland. Debtor's directors convened a board meeting on January 29, 2008, at which time Keith Ressler produced a letter addressed to "Jim" [Little], signed by Keith Ressler, and bearing a date of July 24, 2007. The letter is comprised of two sentences, reading as follows:

> This letter is to serve as an acknowledgment that the two advances of funds by Jim Little to Ressler Hardwoods & Flooring, Inc. in the aggregate amount of $400,000 is (sic) a loan to the company. The loan amount will be rolled into the equity purchase transaction upon the completion and execution of the Purchase Agreement by both parties.

Little avers that he never received this letter. At his deposition, Keith Ressler testified that he did not recall writing the letter, but that he found it while reviewing his computer files in preparation for a meeting of Debtor's board. Little disputes the authenticity of the letter. He also denies that

---

[4] The certificate sent to Little bore a notation printed or typed vertically along the left hand margin stating that "[t]hese securities have not been registered under the Securities Act of 1933 or the Pennsylvania Securities Act of 1972 . . . ."

7

he agreed that the $400,000.00 transferred for the purchase of stock could be recharacterized as a loan to Debtor.

Except for meeting Little during one of his visits to Debtor's facilities, Karen Ressler was not involved in the negotiations for the transfer of stock. She did, however, sign the December 10, 2007 minutes of the meeting of Debtor's directors at which they voted to issue the Ressler shares to Little.

On May 27, 2008, Debtor filed its chapter 11 bankruptcy petition. In its schedules Debtor reported that Little held an unsecured claim based upon a "loan" of $400,000.00.

**Discussion**

The first two counts of the complaint assert violations of Maryland securities law. Defendants request summary judgment on both of these counts. Defendants do not request summary judgment on the third count of the complaint, which alleges a common law cause of action under Maryland law.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (Fed. R. Bank. P. 7056). The party moving for summary judgment has the initial burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of the applicable law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant is successful, the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *Id.* 477 U.S. at 324. When analyzing the pleadings and evidence on a motion for summary judgment, a court must draw all reasonable

8

inferences in the light most favorable to the non-movant. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992). Further, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment even if the quantity of the moving party's evidence far outweighs that of its opponent. *Id.* Thus, in the within proceeding, Defendants have the initial burden of showing that there is no genuine issue of material fact regarding Little's claim under the MSA[5] and that each Defendant is entitled to judgment as a matter of law.

### I. Count One – *Violation of the MSA for failure to register securities*

In relevant part, the MSA requires an issuer to register certain types of securities with the Division of Securities before they may be sold or offered for sale to a Maryland resident. This requirement is couched in terms of a prohibition.

A person may not offer or sell any security in this State unless:

(1) The security is registered under this title;
(2) The security or transaction is exempted under Subtitle 6 of this title; or
(3) The security is a federal covered security.

Md. Code Ann., Corps. & Ass'ns. § 11-501.[6]

The parties in the within case agree that the Ressler shares are securities and that they were not registered under the MSA. Their dispute centers on two issues – whether the Ressler

_____

[5]There appears to be no dispute that Maryland law applies to the transaction at issue.

[6]Civil liability for a violation of §11-501 of the MSA arises under Md. Code Ann., Corps. and Ass'ns. § 11-703(a)(1)(I), which provides that "a person is civilly liable to the person buying a security from him if he . . . offers or sells the security in violation of . . . § 11-501 of this title, or of any rule or order under § 11-205 of this title which requires the affirmative approval of sales literature before it is used." Md. Code Ann., Corps. & Ass'ns § 11-703(a)(1)(I).

9

shares were exempt from registration under Subtitle 6 of the MSA and whether the Ressler

shares qualify as "federal covered securities."

### a. *Federal preemption of covered securities*

The Securities Act of 1933, c. 38, Title I, 48 Stat. 84, (the "Act"), as amended by the

National Securities Market Improvement Act of 1996, Pub.L. No. 104-290, § 102, 110 Stat.

3416, 15 U.S.C. §77 ("NSMIA"), regulates national securities offerings.[7]  NSMIA amended

Section 18 of the Securities Act of 1933, creating a category of securities – termed "covered

securities" – which are exempt from state registration requirements. *See Brown v. Earthboard*

*Sports USA, Inc.,* 481 F.3d 901, 909 (6th Cir. 2007); *Odor v. Rose*, 2008 WL 2557607, *1 (W.D.

Okla.) (The NSMIA "expressly preempts state laws that concern the registration or qualification

of 'covered securities.'").  The Securities and Exchange Commission ("SEC") has promulgated

Regulation D to enable issuers to sell securities without registering them with the SEC as

otherwise required under the Act. Issuers that sell securities in reliance on Regulation D are

required to file Form D with the SEC.  In the within case, Defendants admit that they did not file

Form D in connection with the transfer of  the Ressler shares to Little.  Although they did not

make the required filing, Defendants argue that this failure does not negate their entitlement to

treat the transferred shares as covered securities.

> When Regulation D was originally promulgated in 1982, Rules 504, 505, and 506
> required compliance with Rules 501-503 to qualify for the exemptions. . . .  The

---

[7]The Securities Act of 1933, c. 38, Title I, 48 Stat. 84, 15 U.S.C. §77 consists of eighty (80) subsections published within a single section (§ 77) of Title 15 of the United States Code. 15 U.S.C. § 77a - bbbb.  NSMIA amended the 1933 Act in certain respects, but did not repeal or replace it.  For simplicity and uniformity of reference in this Opinion, I will hereafter refer to the federal statute as "NSMIA," and I will use the U.S. Code references rather than the numbering of the Act.  Thus, for example, section 18 of the Act as amended by NSMIA will be referred to as § 77r.

> S.E.C. amended Regulation D in 1989 to remove the requirement of compliance
> with Rule 503 as a condition for obtaining the exemptions in Rules 504-506. . . .
> The S.E.C.'s summary of the rule change states, "While the filing of Form D has
> been retained, it will no longer be a condition to any exemption under Regulation
> D. New Rule 507 will disqualify any issuer found to have violated the Form D
> filing requirement from future use of Regulation D." Failure to file a Form D may
> result in disqualification from future use of the exemptions in Rules 504-506; and
> it could constitute a felony under 15 U.S.C. § 77x if the failure was willful; but
> the S.E.C. has explicitly stated that filing a Form D is not a condition to obtaining
> an exemption under Rules 504-506.

*Hamby v. Clearwater Consulting Concepts, LLLP*, 428 F.Supp. 2d 915, 920 (E.D. Ark. 2006)

(citing *Larry D. Soderquist*, "Securities Act Registration Exemptions," 1490 PLI/Corp 265, 270

(2005)) (benefit of the exemption obtained without filing Form D). Accordingly, if the shares

Defendants transferred to Little otherwise were required to be registered in Maryland, the issue

on summary judgment is whether the shares were a "covered security" under federal law and,

thus, exempt from the state registration requirement. Federal preemption of state securities law is

an affirmative defense and the burden of proof rests on the party asserting the preemption.

*Brown*, 481 F.3d at 912 (citing *Fifth Third Bank v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir.

2005), *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Thus, Defendants bear the

burden of proof on this issue. Defendants must prove that "no genuine issue of material fact

exists contradicting their claim that the offering was actually a 'covered security.'" *Brown*, 481

F.3d at 913.

    ***b***.        ***What is a "covered security" under NSMIA?***

     At 15 U.S.C. § 77r(b), NSMIA defines four general categories of "covered" securities.

Only one of those provisions is relevant in this case.[8] In pertinent part, that provision states:

---

    [8]"Covered securities" include (1) those listed on the New York Stock Exchange,
American Stock Exchange, or NASDAQ, (2) those issued by a federally registered investment

11

A security is a covered security with respect to a transaction that is exempt from registration under this subchapter pursuant to ... [SEC] rules or regulations issued under Section 77d(2) of this title. . . .

15 U.S.C. § 77r(b)(4)(D).

In turn, § 77d(2) states that "transactions by an issuer not involving any public offering" are exempt from federal registration. Regulation D, which was issued by the SEC pursuant to its authority under § 77d(2), provides as follows:

(a) Exemption. Offers and sales of securities by an issuer that satisfy the conditions in paragraph (b) of this section shall be deemed to be transactions not involving any public offering within the meaning of section 4(2) of the Act.
(b) Conditions to be met–
(1) General conditions. To qualify for an exemption under this section, offers and sales must satisfy all the terms and conditions of §§ 230.501 and 230.502.
(2) Specific Conditions-- (i) Limitation on number of purchasers. There are no more than or the issuer reasonably believes that there are no more than 35 purchasers of securities from the issuer in any offering under this section.
(ii) Nature of purchasers. Each purchaser who is not an accredited investor either alone or with his purchaser representative(s) has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment, or the issuer reasonably believes immediately prior to making any sale that such purchaser comes within this description.

17 C.F.R. § 230.506 ("Rule 506").

Section 230.501 of 17 C.F.R. ("Rule 501") defines eight (8) terms used in Regulation D –

"accredited investor," "affiliate," "aggregate offering price," "business combination,"

---

company, (3) those sold to a qualified purchaser as defined by rules of the Securities Exchange Commission ("SEC") and (4) those exempt from federal registration pursuant to SEC regulations. The Ressler shares do not fall within the first two kinds of covered securities – Debtor's stock is not listed on any stock exchange and it was not sold by a federally registered investment company. While the parties have stipulated to facts showing that Little qualifies as an "accredited investor," their statements of undisputed facts do not specifically address whether or not Little is a "qualified purchaser" as defined by the SEC.

Case 1:08-ap-00109-MDF    Doc 53    Filed 03/31/09    Entered 04/01/09 09:52:21    Desc
Main Document    Page 12 of 21

"calculation of number of purchasers," "executive officer," "issuer," and "purchaser representative." It is not necessary to analyze any of the definitions as they pertain to the case before me because there are no disputes between the parties pertaining to these definitions.

Section 230.502 of 17 C.F.R.("Rule 502") provides three (3) "general conditions" that must be met in order for a securities transaction to qualify for the non-public offering exemption provided for in 17 C.F.R. § 230.506 and NSMIA § 77d(2). The first condition, Rule 502(a), "provides an integration safe harbor to prevent other offerings from being integrated into the initial offering and thereby destroying the exemption (e.g., by exceeding the offering price ceiling)." Thomas Lee Hazen, *Federal Securities Law* 47 (2d ed. 2003). In the instant case, there was only one offering – the initial offering – so Rule 502(a) is inapplicable. The second condition, Rule 502(b), sets forth informational requirements that must be met when a security is sold to someone other than an "accredited investor." An "accredited investor" refers to "[a]ny natural person whose individual net worth . . . at the time of his purchase exceeds $1,000,000." 17 C.F.R. § 230.501(a)(5). The parties do not dispute that Little's individual net worth in December 2007 exceeded $1 million. Therefore, at the time Debtor transferred the Ressler shares, Little was an accredited investor. Accordingly, Defendants were not required to comply with the informational requirements in Rule 502(b) in order for the Ressler shares to be covered securities. The third and final condition, Rule 502(c), prohibits a "covered security" from being offered through "general solicitation or general advertising." The Ressler shares transferred to Little were not offered through a general solicitation or general advertising, but were offered directly to him alone. Thus, the general conditions of the non-public offering exemption are

13

satisfied in this case. The specific conditions set forth in Rule 506(b)(2)(i) and (ii) are also satisfied. Little was an accredited investor and the sole purchaser.

Because all prerequisites of Rules 501, 502 and 506 were met the Ressler shares are "federal covered securities" and their transfer to Little was exempt from registration under § 77d(2). Therefore, Defendants did not violate the MSA by failing to register the Ressler shares.

Anticipating a finding that the Ressler shares were exempt from registration under federal law, Little argues that 15 U.S.C. § 77r(b)(4)(D) preserves the right of a state to require that issuers make certain notice filings for exempt securities. A state may impose a notice filing requirement if it is "substantially similar to those required by rule or regulation under section 77d(2). . . ."[9] Maryland has a notice filing requirement, which is set forth at Md. Regs. Code tit. 02 §02.04.15(D) ("Md. Reg. 15(D)"). Md. Reg. 15(D) provides that:

> Not later than 15 days after the first sale of securities under this regulation, the issuer shall file with the Commissioner:
>
> (1) A manually signed notice on a completed SEC Form D (Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption), as filed with the SEC and as that form may be amended from time to time, which filing or filings shall:
>
> > (a) Constitute the issuer's representation and affirmation to the Commissioner that it has complied with 17 CFR § 230.505 (SEC Rule 505, Exemption for Limited Offers and Sales of Securities Not Exceeding $5,000,000) or 17 CFR § 230.506 (SEC Rule 506, Exemption for Limited Offers and Sales Without Regard to Dollar Amount of Offering), and

---

[9]In his brief, Little further points out that 15 U.S.C. § 77r(c) specifically provides for "the securities commission . . . of any State [to] retain jurisdiction . . . to investigate and bring enforcement actions with respect to fraud or deceit, or unlawful conduct by a broker or dealer, in connection with securities . . . ." 15 U.S.C. § 77(r)(c). The relevance of this section is not clear in this case since it a private action against a securities issuer and not an enforcement action by the Maryland Securities Commissioner.

14

(b) Include in the Appendix, the information requested in the fifth
column with respect to Maryland;

(2) A statement by the issuer or issuer's counsel of the first date of a sale of securities in
Maryland made under this regulation; and

(3) The fee required by the Maryland Securities Act, Corporations and
Associations Article, § 11-506, Annotated Code of Maryland.

Md. Regs. Code tit. 02 §02.04.15(D)

Little argues that Maryland's notice filing requirements are permissible under 15 U.S.C. §
77r(b)(4)(D). Accordingly, Defendants remain liable for violations of the MSA even though the
transferred Ressler shares are a "federal covered security" under state law. Stated differently,
Little asserts that although the shares he purchased were exempt from registration by federal law
as a "covered security," federal law carves out a narrow exception from preemption when it
permits a state to impose notice filing requirements. Although a state cannot require an issuer to
register "covered securities," it can require an issuer to make a notice filing with the state and to
suffer penalties if the issuer fails to comply.

Section 77r(b)(4)(D) authorizes a state to impose notice requirements if they are
"substantially similar" to the regulations promulgated under 15 U.S.C. § 77d(2). Therefore, state
regulations may be no more restrictive than federal regulations on the same subject. SEC
Regulation D, codified at 17 CFR 230.501 - 506, was promulgated, in part, under 15 U.S.C. §
77d(2).[10] The first numbered paragraph of Md. Reg. 15(D) specifically requires the filing of SEC
Form D. Therefore, it is clear that the notice filing requirements of Md. Reg. 15(D) are not

---

[10]SEC Rule 506 (Exemption for Limited Offers and Sales Without Regard to Dollar
Amount of Offering), which is part of Regulation D, is promulgated under 15 U.S.C. § 77d(2).
Debtor claims a exemption from registration under Rule 506.

preempted by federal law and that Debtor was required to make a notice filing with the state, which it failed to do. This finding, however, does not require that I conclude *a fortiori* that Debtor is liable to Little for failing to comply with the notice filing requirement.

Federal law requires an issuer selling securities in reliance on Regulation D to file Form D with the SEC. 17 C.F.R. §230.503(a). SEC Rule 507 provides that the exemption under Rule 506 is not available if the issuer is subject to an order enjoining the issuer for failing to comply with SEC Rule 503. 17 C.F.R. § 230.507. The regulations are notably silent, however, regarding any penalty for simply failing to file Form D. Thus, absent an injunction for prior noncompliance, an issuer's failure to file Form D does not bar reliance on the Rule 506 safe harbor. Accordingly, state law registration requirements are preempted because the security is a "federal covered security" even though an issuer has failed to comply with SEC Regulation D. *Hamby v. Clearwater Consulting Concepts, LLLP*, 428 F.Supp. 2d 915, 920 (E.D. Ark. 2006); *Chanana's Corp. v. Gilmore*, 539 F.Supp. 2d 1299, 1303-04 (W.D. Wash. 2003).[11]

Little asserts, however, that while the Ressler shares may be a "federal covered security," the exclusion from preemption found in SEC 506 opens the door for Little to maintain a private cause of action against Defendants for failing to comply with the Maryland notice filing

---

[11]Between the adoption of Regulation D in 1982 and its amendment in 1989, "an otherwise valid offering was destroyed by a delinquently filed Form D." J. William Hicks, 7A *Exempted Trans. Under Securities Act 1933* § 7:231 (2003) (quoted in *Chanana's Corp*, 539 F. Supp. 2d at 1303). In response to criticism of this practice, the SEC "'eliminated the Form D filing requirement of Rule 503 as a condition to these exemptions.' *Id.; see also* Securities and Exchange Commission Summary, *Regulation D; Accredited Investor and Filing Requirements,* 54 Fed.Reg. 11369 (March 20, 1989) ('While the filing of Form D has been retained, it will no longer be a condition to any exemption under Regulation D.'). Rather than removing the exemption, the consequence of failing to file a Form D is disqualification from making *future offerings* under the rules. 17 C.F.R. § 230.507." *Chanana's Corp.* 539 F. Supp. 2d at 1304.

16

requirements. In *Chanana's Corp.*, the District Court for the Western District of Washington addressed a similar argument regarding the application of Washington securities laws. The District Court noted that "[t]he primary purpose of NSMIA was to preempt state 'Blue Sky' laws, which required issuers to register many securities with state authorities prior to marketing in the state. *Zuri-Invest AG v. Natwest Finance Inc.,* 177 F. Supp.2d 189, 192 (S.D.N.Y.2001)." *Chanana's Corp.*, 539 F. Supp.2d at 1304. The Court observed that NSMIA was passed in 1996 to eliminate this cumbersome regulatory scheme. *Id.* (citations omitted). Seeking to soften the impact of these changes on state treasuries, Congress permitted states to continue to collect fees from issuers for notice filings. It also explicitly authorized states to suspend offers or sales if the issuers failed to file or pay a fee. *See* 15 U.S.C. § 77r(c)(3). Thus, a state can require that a security preempted from state registration requirements as a "covered security" file a Form D and pay filing and other fees. *Id.* at 1305

Maryland securities regulations require that an issuer file a notice on SEC Form D within 15 days of a sale. Md. Regs. Code tit. 02 §02.04.15(D). If an issuer fails to comply with this requirement, Md. Stat. Ann., Corps. & Ass'ns § 11-701.1 and 11-702(b) authorizes the Securities Commissioner to take a variety of enforcement actions against the issuer. It is undisputed that Debtor did not file a Form D within the 15-day period, or at any other time. The issue at bar is what penalties may be imposed for Debtor's failure to comply with this requirement, and, specifically, whether there is a private right of action available to Little.

In support of his allegation that the Ressler shares were required to be registered under the MSA, Little invokes § 11-703(a), which provides that, "a person is civilly liable to the person buying a security from him if he offers or sells a security in violation of § 11-304(b),

§ 11-401(a), § 11-402(a), or §11-501 of [the MSA] or of any rule or order under § 11-205 of this title which requires the affirmative approval of sales literature before it is used. . . ." Md. Code Ann., Corps. & Ass'ns § 11-703(a)(i). Sections 11-304(b), 11-401(a), and 11-402(a), clearly are inapplicable to the stipulated facts in the within case. These provisions address prohibited representations by an issuer and transactions by unregistered broker-dealers and advisors or their agents. Section 11-501 prohibits the sale of unregistered securities in Maryland unless such securities are federal covered securities. There is no provision in § 11-703(a)(i) that empowers a purchaser to seek civil damages for the failure of an issuer to  to comply with the notice filing requirements of  Md Reg. 15(D), and Little does not cite to any other provision of the MSA to support his claim.

Little's interpretation of the state notice filing requirement would convert a covered security for which no Form D had been filed into an "uncovered" security subject to the state's registration requirement. The effect of this broad interpretation of the notice filing requirement imposed by Maryland law would negate the purpose of NSMIA. A "federal covered security" would be forced to register under Maryland law, with a penalty for failing to register, although no comparable penalty exists under federal law. This interpretation may conflict with NSMIA's prohibition in 15 U.S.C. § 77r(a), which provides that state laws requiring registration may not apply "directly or indirectly" to a federal covered security.

Therefore, I conclude that Defendants have demonstrated that they are entitled to judgment as a matter of law on Little's cause of action for damages based upon Defendants' failure to register the Ressler shares or to comply with the Maryland notice filing requirement. Because I find that the Ressler shares are federal covered securities, I find it unnecessary to

Case 1:08-ap-00109-MDF    Doc 53    Filed 03/31/09    Entered 04/01/09 09:52:21    Desc
Main Document      Page 18 of 21

determine whether the shares are exempt under state law. Count one of the Complaint will be dismissed.

## II. Count Two - Violation of the MSA for Securities Fraud

Count Two of the complaint is based on Md. Code Ann., Corps. & Ass'ns § 11-301. Under that section,

> [i]t is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly to: (1) employ any device, scheme, or artifice to defraud; (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit on any person.

Md. Code Ann., Corps. & Ass'ns § 11-301. Little's complaint avers that Defendants violated § 11-301 by failing to inform him that the $400,000.00 he had transferred to Defendants would be used for "unauthorized purposes," including the purchase of only 17% of Debtor's shares. Defendant's actions, Little argues, "constituted a sale of a security by means of an untrue statement of material fact or an omission of a material fact." (Complaint at para. 32.)

Defendants' motion for summary judgment argues that Count Two should be dismissed because there is no evidence that Defendants committed securities fraud. In support of this position, Defendants' assert that Little knew that Debtor needed a substantial cash infusion to continue its operations, that Little agreed to provide the funds, and that the funds were used for the agreed upon purposes. In the Statement of Undisputed Facts, Little admits that he "understood that Ressler Inc. had a temporary lack of cash available to pay for raw materials to fill orders and to make lease payments," but he does not concede that the $400,000.00 was advanced for this purpose. (Plaintiff's Response to Defendants' Statement of Undisputed Facts,

para. 12.) Defendants acknowledge that the $400,000.00 was also intended to serve as a deposit for purchase of Debtor's stock. They admit that Little received certain shares for the funds advanced, although the transfer was later rescinded. No fraud was committed, they argue because Little's money was used for the purposes that Little himself intended.

While Defendants' argument is generally accurate, it fails to acknowledge that the checks provided by Little clearly state that the money was intended as a deposit toward the purchase of a controlling interest in Debtor. Little clearly did not receive a controlling interest when Defendants transferred 17% of Debtor's outstanding stock in consideration for the $400,000.00 deposit. Further, Little ultimately did not receive any shares after the stock transfer was rescinded. There is no evidence in the record that the parties agreed that the deposit was to be forfeited if the sale was not consummated. Because the parties dispute the relevant facts, I cannot conclude that Defendants have proven that there is no genuine issue of material fact. Accordingly, summary judgment must be denied as to Count Two.

### III. Liability of Keith, Kenneth and Karen Ressler as Debtor's Directors.

In their motion for summary judgment, Defendants assert that there is no legal or factual basis to hold Defendants Keith Ressler, Kenneth Ressler and/or Karen Ressler liable as control persons under the [MSA]." (Motion for Summary Judgment, para. 3.) Defendants Brief contains a single paragraph consisting of three sentences baldly asserting that Kenneth and Karen Ressler had "minimal involvement" in the transaction because Kenneth had recently undergone knee surgery and because Karen did not understand the transaction. These assertions are insufficient for me to find that there is no genuine issue of material fact regarding the Resslers' individual

20

liability and that they are each entitled to judgment as a matter of law.  Accordingly, the motion

for summary judgment will be denied as to the Resslers.

      An appropriate order will be entered.

**By the Court,**

*Mary D. France*

**Bankruptcy Judge**

Date: March 31, 2009

*This document is electronically signed and filed on the same date.*